The Honorable Ricardo S. Martinez
Noted for: January 29, 2021

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| JIKIRI BAUTISTA, an individual, ARI SILVA, an individual;<br><br>Plaintiffs,<br>v.<br><br>WFS EXPRESS, a Delaware corporation, CONSOLIDATED AVIATION SERVICES, a New York corporation;<br><br>Defendants. | NO. 2:18-cv-00757 RSM<br><br>STIPULATED MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

Plaintiffs Jikiri Bautista and Ari Silva (the "Plaintiffs"), on behalf of themselves and the putative class they seek to represent, and Defendants WFS Express, Inc. and Worldwide Flight Services, Inc (the "Defendants") respectfully submit this Stipulated Motion for Certification of Settlement Class and for Preliminary Approval of Class Action Settlement.

## I. INTRODUCTION.

This is a putative class action brought by Defendants' former employees. In this lawsuit, the Plaintiffs alleged that the Defendants failed to provide hourly employees with statutory meal and rest periods and deducted labor time for meal periods never taken. The Plaintiffs alleged that Defendants' practices damaged both themselves and their hourly co-workers, who comprise the putative Class. Defendants deny these allegations.

The Plaintiffs and putative Class Members were employed as package handlers at Defendants' Seattle-Tacoma International Airport ("STIA") facility who worked on a contract

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

with Amazon. Their duties included loading and unloading packages from cargo aircraft, with an emphasis on speed and efficiency. Shifts regularly included both periods of intense activity and downtime.

The Plaintiffs alleged that they had not received meal periods on shifts of five hours or more, a second meal period on shifts of eleven hours or more, and regular rest periods. In addition, the Plaintiffs alleged their paystubs regularly reflected meal periods which had not occurred. Believing that the Defendants' conduct violated Washington State law, the Plaintiffs raised these claims on behalf of themselves and the putative Class. Defendants disputed these allegations.

## II. STATEMENT OF FACTS.

### A. Procedural Posture.

This action was originally filed in King County Superior Court on April 25, 2018, and it was removed to federal court on May 25, 2018. On June 15, 2018, the Defendants filed their Answer (Dkt. #9), denying the Plaintiffs' allegations and objecting to certification of the putative Class. On October 5, 2018, the Plaintiffs propounded their First Interrogatories and Requests for Production. Over the next eighteen months, the Plaintiffs would issue four additional sets of written discovery. At the Parties' request, the Court has modified the case schedule several times for the Parties to conduct additional discovery. Dkts. #17, 20, & 25.

Beginning in June 2019, the Parties began efforts to coordinate a mediation in hopes of resolving the dispute. Declaration of Duncan Turner, ¶2. The Parties agreed to mediate with Judge Steve Scott, ret. *Id*. The mediation was originally set for October 23, 2019, but was eventually re-scheduled to February 10, 2020. *Id*. On February 10, 2020, the Parties participated in a six-hour mediation session with Judge Scott but were unable to reach resolution. *Id*.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Following the unsuccessful mediation, counsels for the Parties continued their settlement efforts and discovery efforts, and a Conditional Settlement Agreement was signed on January 8, 2021. Turner Dec., Ex. One.

**B. Terms of the Proposed Settlement.**

The terms of the parties' proposed settlement are contained within the Settlement Agreement. For purposes of preliminary approval, the following summarizes the Settlement Agreement's terms:

**1. The Settlement Class.**

The proposed Settlement Class is comprised of:

> All hourly employees at Employers' Sea-Tac International Airport ("STIA") facility who worked on the Amazon contract during the period between May 15, 2016 and November 21, 2020, and who have not disclaimed in sworn testimony experiencing missed meal or rest periods.

The Defendants' timekeeping records confirm the Settlement Class is comprised of approximately 943 members.

**2. Settlement Relief.**

**i. Financial Consideration and Release.**

Under the terms of the Settlement Agreement, the Defendants agreed to pay six-hundred and fifteen thousand dollars ($615,000) (the "Gross Settlement Fund.") *Id*. In addition to the Gross Settlement Fund, Defendants have agreed to pay all administration costs and payroll taxes. In consideration of the Gross Settlement Fund, the Settlement Class members shall release the Defendants and other released parties from:

> Each settlement class member shall hereby knowingly, voluntarily, and completely release Employer and its predecessors, successors, affiliates, parent companies, insurers, carriers, subcontractors, shareholders, employees, former employees, agents, and any other related party or entity from any and all claims that relate to the Settlement Class Members' compensation, including but not limited to claims for minimum wages, overtime, meal periods, rest breaks, and

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

> wage statements or wage records. The released claims are those arising under the Washington Minimum Wage Act, RCW 49.46 et seq., the Washington Wage Rebate Act, RCW 49.52 et seq., the Washington Industrial Welfare Act, RCW 49.12 et seq., and any claim to attorneys' fees and costs based on the claims released in this Paragraph, which were affirmatively asserted or could have been asserted in the Lawsuit ("Released Claims").

Settlement Agreement ¶ 3.3.

Defendants will select and retain a third- party Claims Administrator and will bear any costs associated with preparation and distribution of the Notice to the Class, reception and reporting of opt-outs and objectors, and distribution of the settlement funds. Plaintiffs' counsel will calculate each Settlement Class Member's share of the Gross Settlement Fund.

**ii. Settlement Payments.**

The Settlement Fund will be distributed to all Settlement Class Members who choose not to opt out of the class action. Assuming the Court grants the requested attorney's fees and litigation expenses, the Plaintiffs estimate the average net recovery will be approximately $448.17. This represents approximately 90.3% of calculated missed meal period damages. The range between the lowest and highest recovery will be determined by the number of missed and deducted meal periods and number of shifts worked for each settlement Class Member.

The process for payment is as follows: within sixty days of the Court's final approval, Defendants' will transfer the Gross Settlement Fund to the Claims Administrator. The Claims Administrator will prepare and issue the necessary checks for the Settlement Awards, the Service Award, and the Attorney's Fees Award, as well as issuing all the necessary tax documents. Payments designated as back wages will be treated as W-2 payments. Defendants have also agreed to pay any payroll taxes that become due as result of its settlement payments to Class Members.

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

All checks shall expire 120 days after issuance. Settlement Class Members who have not cashed their checks prior to expiration shall have an additional 245 days to contact the Claims Administrator to obtain a re-issued check. All funds not claimed within 485 days of the issuance of the first check will be turned over to the Washington State Department of Revenue's Unclaimed Property Section for disposition in accordance with RCW 63.29.

**iii. The Notice Program.**

In conjunction with preliminary approval, the Parties respectfully request that the Court approve a notice and claims program in which the Claims Administrator will (1) send individual notice of the settlement by first-class mail and e-mail to members of the Settlement Class; and (2) process and track opt-out requests. Defendant's counsel will also prepare and serve a timely Class Action Fairness Act notice. The proposed Notice of Class Action Settlement is attached as Exhibit Two to the Declaration of Duncan Turner.

The settlement is conditioned upon no more than 10% of the Settlement Class opting out. Defendants shall have the right to terminate the Settlement Agreement by providing notice to Plaintiffs' counsel within 10 days of the filing of the opt-out that exceeds the 10% threshold.

**iv. Plaintiffs' Service Award.**

Plaintiffs will ask the Court to approve a service award of $8,000 ($4,000 for each Class Representative) to be paid out of the Gross Settlement Fund. These awards will compensate Plaintiffs for their time and effort serving as the named plaintiffs and for the risks they undertook in prosecuting the case. The enforceability of the settlement is not contingent on the Court's approval of the service award in the amount sought by the Plaintiffs.

**v. Attorney's Fees and Litigation Expenses.**

Plaintiffs' counsel will ask for an award of attorney's fees amounting to no more than $153,750.00, to compensate and reimburse them for work already performed on the case and all

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

the work remaining to be performed in connection with the settlement. Plaintiffs' Counsel will also seek reimbursement for out-of-pocket litigation costs, which are approximately $32,500.[1] The enforceability of the settlement is not contingent on the Court's approval of an award of attorney's fees and costs in the amounts sought by Plaintiffs' counsel. Plaintiffs' counsel will provide an accounting prior to final approval.

**vi. Administrative Costs**

Defendants shall separately bear any expenses and costs arising from administration of settlement class claims. Subject to the Court's approval, Defendants have selected CPT Group as Claims Administrator.

**3. Considerations in Reaching Settlement.**

The Gross Settlement Fund represents the negotiated value of missed meal periods, improperly deducted meal periods, meal periods outside the period prescribed by statute, and missed rest periods, as well as service awards for the Plaintiffs and attorney's fees and costs to Plaintiffs' counsel. This negotiated value also takes into account the risk that the Plaintiffs would not recover any damages if they continued to litigate and the Defendants received a favorable judgment. The Defendants assert that putative Class Members would recover nothing on their claims.

To ascertain putative Class Members' potential damages, Plaintiffs' counsel analyzed Defendants' timekeeping records for the period between May 15, 2016 and November 21, 2020. At the Defendants' STIA facility, employees tracked their time electronically. With the electronic system, employees used their biometric thumbprint to clock-in and clock-out. Under

[1] To determine the extent to which putative Class Members were allegedly damaged, Plaintiffs' counsel retained a specialized data analyst. This analyst spent substantial time organizing and analyzing Defendants' timekeeping data. Almost all of these litigation costs represent his fee.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

this system, for any shift greater than five hours, the record would normally reflect four entries: (1) clock-in, (2) clock-out for lunch, (3) clock-in after lunch, and (4) clock-out.

Plaintiffs' analysis determined that for approximately 26.5% of all shifts over five hours, Class Members' electronic timekeeping records did not reflect a meal period. Plaintiffs also identified instances where Defendants' managers or timekeeping system deducted thirty-minute meal periods from Class Members' shifts, without corresponding biometric punches. The approximate value of these missed and deducted meal periods was approximately $465,962.71. Plaintiffs also determined that for approximately 17.8% of all shifts, meal periods were not provided between the second and fifth hour, as prescribed in WAC 296-126-092. It was more difficult to ascertain the monetary value of these violations, because the employees received a meal period, it was simply too early or too late in their shift.

Plaintiffs also alleged that putative Class Members were deprived of their mandatory rest periods for approximately half of their labor shifts. Because putative Class Members' electronic timekeeping records did not customarily reflect rest periods, this allegation could only be proven with witness testimony. Plaintiffs obtained witness declarations on this subject, but the sample size was less than .25% of the putative Class.

To contest these allegations, Defendants' produced witness declarations from current employees who testified they always received their mandatory meal and rest periods. The Defendants also produced video footage showing a "day-in-the-life" at Defendants' facility. According to the Defendants, the footage showed that on June 4, 2019, employees received multiple breaks during each shift.

Here, the Plaintiffs alleged three distinct violations of Washington State law: (1) missed and deducted meal periods, (2) early or late meal periods, and (3) missed rest periods. In

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

considering the proposed settlement, Plaintiffs' counsel considered each distinct component and the likelihood of prevailing on that claim. After analyzing the Defendants' timekeeping records and considering Defendants' rebuttal evidence, Plaintiffs' counsel believes the proposed settlement is fair and reasonable.

## III. AUTHORITY AND ARGUMENT

### A. The Settlement Approval Process.

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. Updated 2015) (citing cases). Here, the proposed settlement is the best vehicle for the Settlement Class Members to receive the relief to which they may be entitled in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected settlement class members; and (3) a "fairness hearing" or "final approval hearing," at which settlement class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *Manual for Complex Litigation (Fourth)* ("MCL 4th") §§ 21.632 – 21.634, at 432–34 (2014). This procedure safeguards settlement class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* Newberg § 13.1.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement "is within the range of possible approval" and thus whether notice to the settlement class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. Newberg § 13.13. *See City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)). The Court's grant of preliminary approval will allow the Settlement Class to receive direct notice of the proposed Settlement Agreement's terms and the date and time of the Final Approval Hearing, at which Settlement Class Members may be heard regarding the Settlement Agreement, and at which time further evidence and argument concerning the settlement's fairness, adequacy, and reasonableness may be presented. *See* MCL 4th § 21.634.

**B. The Criteria for Settlement Approval Are Satisfied.**

The Ninth Circuit puts "a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). To assess a settlement proposal, courts must balance the strength of the Plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *In re Online DVD-Rental Antitrust Litig.* ("*In re Online DVD*"), 779 F.3d 934, 944 (9th Cir. 2015).

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

**1. The Settlement Agreement is the Product of Serious, Informed, and Non-Collusive Negotiations.**

The Court's role is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted); *see also In re Online DVD,* 779 F.3d at 944 (noting settlements in class actions "present unique due process concerns for absent class members," including the risk that class counsel "may collude with the defendants") (quoting *In re Bluetooth Headset Prods. Liab. Litig.* ("*In re Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2010)).

The Settlement Agreement is the result of intensive, arm's-length negotiations between experienced attorneys for both parties who are competent practitioners in class action litigation in general and with the legal and factual issues of this case in particular. Turner Decl. ¶¶2-13; Declaration of Abel M. Tsegga, ¶2-9. The Parties attempted to mediate the dispute with Judge Scott, and later resolved the case through ten months of counsel-to-counsel negotiations.

**2. The Settlement Provides Substantial Relief to the Settlement Class and Treats All Settlement Class Members Fairly.**

The Settlement Agreement requires Defendants to pay up to $615,000 as the Gross Settlement Fund. No settlement funds will revert back to the Employer. The known identities and contact information of the Settlement Class Members should ensure a very high notification rate with the Settlement Notice. Further, the proposed method of calculating recovery directly reflects the missed and deducted meal periods and rest periods allegedly experienced by each individual Settlement Class Member.

**3. The Settlement Agreement is Fair and Reasonable In Light of the Alleged Claims and Defenses.**

The Complaint asserts claims for violations of Washington's wage and hour laws, prejudgment interest, and attorney's fees and costs. The Complaint also seeks payment of double

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

damages under RCW 49.52.070. Although this case was conditionally settled before the determination of key legal issues in dispute, the Defendants expressed their intention, if necessary, to contest the issue of class certification, and Plaintiffs' allegations of improper meal and rest periods. If successful, this could result in dismissal of all the Settlement Class Members' claims. The recoverability of prejudgment interest is highly uncertain because extensive analysis was required to identify the full scope of Settlement Class Members' damages. Defendants would likely argue that such analysis precludes recoverability of prejudgment interest. Finally, the recoverability of double damages is also uncertain because the Defendants would likely argue that a bona fide dispute existed as to whether long periods of employee downtime satisfied the mandatory meal and rest period requirements.

**4. Plaintiff's Requested Fees Are Reasonable.**

Plaintiffs' counsel will seek an award of up to $153,750.00 to compensate them for reasonable fees, as well as reimbursement of any out-of-pocket costs they have incurred in prosecuting this action, which are expected to be approximately $32,500.

The Ninth Circuit has approved two methods for calculating attorneys' fees depending on the circumstances: the lodestar method and the percentage-of-recovery method. Under the lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the hours they reasonably expended on the litigation by their reasonable hourly rates. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund…" *In re Online DVD*, 779 F.3d at 949. Regardless of the method, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth*, 654 F.3d at 941.

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

The requested fee of $153,750 is equal to the Ninth Circuit's 25% benchmark. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Settlement Class Members will also receive approximately 90.3% of their wages for missed and deducted meal breaks. Plaintiffs' Counsel have achieved an excellent result for the Settlement Class, and the majority of the Gross Settlement Fund will be distributed as monetary awards to Settlement Class Members. Plaintiffs' Counsel were confident in their ability to succeed at class certification and at trial. Nevertheless, success was by no means guaranteed, especially considering the complexity of the issues involved. Because Plaintiffs' counsel agreed to prosecute this case on a contingency basis with no guarantee of ever being paid, they faced substantial risk if they proceeded to trial.

Prior to final approval, Plaintiffs' counsel will file a separate motion for an award of attorney's fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

**C. The Requested Service Award Is Reasonable.**

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). Incentive or service awards are generally approved so long as the awards are reasonable and do not undermine the adequacy of the class representatives. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1164 (9th Cir. 2013) (finding service award must not "corrupt the settlement by undermining the adequacy of the class representatives and class counsel"). For example, if a settlement explicitly conditions a service award on the class representative's support for the settlement, the service award is improper. *See id.* By contrast, where a settlement "provide[s] no guarantee that the class representatives would receive incentive

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

payments, leaving that decision to later discretion of the district court," a service award may be appropriate." *In re Online DVD*, 779 F.3d at 943 (approving $5,000 service award to class representatives and distinguishing *Radcliffe*).

Here, the Plaintiffs individually request service awards of $4,000.00, or an amount the Court deems appropriate. This is less than the award given in *In re Online DVD* and a minute portion of the Gross Settlement Fund. Plaintiffs' support of the settlement is independent of any service award and not conditioned on the Court awarding any particular amount or any award at all, in stark contrast to *Radcliffe*. Thus, Plaintiffs' adequacy as class representatives is unaffected by an appropriate service award that recognizes their efforts and contributions to the case.

Although Plaintiffs were not deposed, their contribution was substantial. They provided insight into working conditions at Defendants' facility, assisted in responding to discovery, and participated in mediation. They are deserving of a service award.

**D. The Proposed Notice Program Is Constitutionally Sound.**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* MCL 4th § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, a settlement notice should do the following:

- Define the class;
- Describe clearly the options open to the class members and the deadlines for taking action;
- Describe the essential terms of the proposed settlement;
- Disclose any special benefits provided to the class representative;

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;
- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;
- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and
- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The proposed form of notice, attached as Exhibit Two to the Turner Decl. ("Notice"), satisfies all of the above criteria. The Notice is clear, straightforward, and provides persons in the Settlement Class with enough information to evaluate whether to participate in the settlement. Thus, the Notice satisfies the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

The Claims Administrator will send direct notice to each Settlement Class Member's current or last-known address through first-class U.S. Mail. Notices will also be distributed to last-known e-mail addresses. This Notice Program satisfies due process especially because Rule 23 does not require that each potential class member receive actual notice of the class action. *Mullane*, 339 U.S. at 316 (explaining that the Supreme Court "has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning").

All in all, the Notice Program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

**E. Provisional Certification of the Class is Appropriate.**

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

For settlement purposes only the Parties have agreed to certify the Settlement Class and respectfully request that the Court provisionally certify the Settlement Class defined as:

> All hourly employees at Employers' Sea-Tac International Airport ("STIA") facility who worked on the Amazon contract during the period between May 15, 2016 and November 21, 2020, and who have not disclaimed in sworn testimony experiencing missed meal or rest periods.

As detailed below, the Settlement Class satisfies the applicable certification requirements.

**1. The Rule 23(a) Factors Are Met for Settlement Purposes.**

**a. Numerosity.**

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). "It is a long-standing rule that 'impractical' does not mean 'impossible' rather, impracticality means only 'the difficulty or inconvenience of joining all members of the class.'" *McClusky v. Trustees of Red Dot*, 268 F.R.D. 670, 673 (W.D. Wash. 2010). The Settlement Class herein includes approximately 943 employees, rendering joinder impracticable. *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 674 (W.D. Wash. 2010).

**b. Commonality**

The commonality requirement of Rule 23(a)(2) is satisfied because the questions of law common to the Settlement Class are, in fact, identical, and the questions of fact address merely each individual worker's claim, and the answers to these questions are all derived from a common database. Because persons in the Settlement Class here all allegedly suffered the same injury and are generally subject to the same defenses, commonality is satisfied for settlement purposes.

**c. Typicality**

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, the representatives were hourly workers at Defendants' STIA facility during the relevant period, and their timekeeping records show alleged meal and rest break violations. They are not asserting claims different than those of the remaining Settlement Class Members. Because Plaintiffs' claims arise from the same course of conduct that affected all Settlement Class Members, typicality is satisfied for settlement purposes.

**d. Adequacy of Representation**

Adequacy requires the representative of a class to provide fair and adequate representation of the class. Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020). In the context of a class settlement, examination of potential conflicts of interest "is especially critical." *In re Online DVD*, 779 F.3d at 942 (internal marks and quotation omitted). That said, courts will not deny class certification on the basis of "speculative" or "trivial" conflicts. *See id.* (finding settlement class representatives adequate and overruling objection that proposed $5,000 service award created a conflict of interest).

Plaintiffs have no interests that are antagonistic to or in conflict with persons in the Settlement Class they seek to represent. They allegedly suffered the same meal and rest period violations that all persons in the Settlement Class allegedly suffered. Class Counsel are active practitioners with substantial experience in employment law and class action litigation,

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

including cases very similar to this one. *See* Turner Decl. ¶¶ 10-16. The requirements of Rule 23(a) are satisfied for settlement purposes.

**2. The Rule 23(b)(3) Factors Are Satisfied for Settlement Purposes.**

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance inquiry measures the relative weight of the common questions. *Amchem*, 521 U.S. at 624. Common issues predominate here for settlement purposes because the central liability question in this case, whether Defendants are liable for failing to provide hourly employees with mandatory meal and rest period, is the only issue, and it applies to all Settlement Class Members.

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems ... for the proposal is that there be no trial."). Additionally, resolution of hundreds of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See id.* at 617 (noting the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). Certification for purposes of settlement is appropriate.

**E. Scheduling a Final Approval Hearing Is Appropriate.**

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval. The Court will determine after the final

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

approval hearing whether the settlement should be approved, and whether to enter a final order and judgment under Rule 23(e). Plaintiffs request that the Court set a date for a hearing on final approval at the Court's convenience, approximately 100-140 days after entry of an order preliminarily approving the settlement. If the Court preliminarily approves the settlement in January 2021, the final approval hearing should be scheduled for approximately May 8, 2021. The Parties also request that the Court schedule further settlement proceedings pursuant to the schedule set forth below:

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Mailing Date | Within 30 days following entry of the Preliminary Approval Order |
| Exclusion/Objection Deadline | 30 days after Notice Mailing Date |
| Claims Administrator's Filing of Exclusion Requests | 15 days after Exclusion/Objection Deadline |
| Plaintiffs' Counsel's Fee Motion Submitted | 30 days after Exclusion/Objection Deadline |
| Final Approval Brief and Response to Objections | 30 days after Exclusion/Objection Deadline |
| Final Approval Hearing / Noting Date | Between 100-140 days of entry of the Preliminary Approval Order |
| Final Approval Order Entered | At the Court's Discretion |

## IV. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed settlement class; (3) appoint Badgley Mullins Turner PLLC and The Law Office of Abel M. Tsegga as class counsel; (4) appoint Jikiri Bautista and Ari Silva as class representatives; (5) approve

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

the proposed notice plan; (6) appoint CPT Group to serve as claims administrator; and (7) schedule the final fairness hearing and related dates.

DATED this 29th day of January 2021.

BADGLEY MULLINS TURNER, PLLC

/s/ Duncan C. Turner______________
Duncan C. Turner, WSBA No. 20597
Mark A. Trivett, WSBA No. 46375
Telephone: (206) 621-6566
Facsimile: (206) 621-9686
Email: duncanturner@badgleymullins.com
Email: mtrivett@badgleymullins.com
**Attorneys for Plaintiffs**

ABEL M. TSEGGA, PLLC

*/s/Abel M. Tsegga*________________
Abel M. Tsegga, WSBA No. #46349
PO Box 5246, Lynnwood, WA 98046
144 Railroad Ave., #308
Edmonds, WA 98020
Telephone: 206-697-4878
Email: abel@tglawgrp.com
**Attorney for Plaintiffs**

DAVIS WRIGHT TREMAINE LLP

*/s/ Kathryn S. Rosen*_______________
Kathryn S. Rosen, WSBA #29465
920 Fifth Avenue, Suite 3300
Seattle WA 98104-1610
Telephone: 206-757-8134
Facsimile 206-757-7134
Email: katierosen@dwt.com
**Attorney for Defendants**

STIPULATED MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT - 19

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686